**DICHELLO DISTRIBUTORS, INC.,**
  *Plaintiff/Counterclaim Defendant*

*v.*

**ANHEUSER-BUSCH, LLC,**
  *Defendant/Counterclaim Plaintiff.*

**Case No. 3:20-cv-01003-MPS**

**September 28, 2021**

## ANHEUSER-BUSCH, LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant/Counterclaim Plaintiff Anheuser-Busch, LLC ("Anheuser-Busch") hereby answers the Amended Complaint filed by Plaintiff Dichello Distributors, Inc. ("Dichello" or "Plaintiff") on August 14, 2020. Anheuser-Busch denies all allegations not expressly admitted.

## ANSWER

**"THE PARTIES"**

1.  Anheuser-Busch is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies the same.

2.  Anheuser-Busch admits that Dichello is a wholesaler of numerous beer brands, including those manufactured by Anheuser-Busch. Anheuser-Busch admits that the distribution agreement between Anheuser-Busch and Dichello that sets forth the rights and responsibilities of each party—the Amended and Restated Anheuser-Busch, Inc. Wholesaler Equity Agreement (the "Equity Agreement")—grants Dichello an exclusive territory within which to sell certain Anheuser-Busch products: all of Fairfield and New Haven counties and portions of Litchfield and

Middlesex counties in Connecticut. Anheuser-Busch admits that the current version of the Equity Agreement was entered into by Anheuser-Busch and Dichello in 1997.

3.     Anheuser-Busch admits that it is a Missouri limited liability company with its principal place of business located at One Busch Place, St. Louis, Missouri; that it was formerly known as Anheuser-Busch, Incorporated until it converted into a limited liability company and changed its name to Anheuser-Busch, LLC on October 1, 2011; and that it is registered to do business in the State of Connecticut.

4.     Anheuser-Busch admits that it is a brewer of beer that operates twelve flagship breweries and numerous craft breweries across the United States, and that its portfolio of products includes more than 100 brands, including Bud Light, Budweiser, Busch, Michelob, Rolling Rock, Natural Light, Stella Artois, LandShark, Shock Top, Goose Island, Blue Point, and Beck's.

**"GENERAL NATURE OF THE ACTION"**

5.     Anheuser-Busch admits that in its Amended Complaint, Dichello purports to bring claims against Anheuser-Busch arising under the Connecticut Unfair Trade Practices Act, C.G.S. § 42-11a *et. seq.* and the common law of the State of Connecticut. The Court has dismissed Counts Two through Seven and Count Nine (all of Dichello's antitrust claims and its claim for declaratory relief). *See* ECF No. 59. As a result, no response is required for allegations relating to Counts Two through Seven and Count Nine. To the extent a response is required, Anheuser-Busch denies the allegations.

6.     Anheuser-Busch admits that Dichello's Amended Complaint sought declaratory judgment relief, injunctive relief, and money damages, including an award of treble damages, punitive damages, interest, costs, and reasonable attorneys' fees. In dismissing Counts Two through Seven and Count Nine, the Court has denied the relief requested in those Counts. *See* ECF

No. 59. As a result, no response is required as to the relief requested for those Counts. To the extent a response is required, Anheuser-Busch denies the allegations.

**"THE UNITED STATES BEER MARKET"**

**"Historical Basis of State Regulation"**

7.      Anheuser-Busch is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies the same.

8.      The statements set forth in Paragraph 8 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies the same.

9.      Anheuser-Busch admits that Connecticut has enacted the Liquor Control Act, C.G.S. § 30-1 *et seq*. The statute speaks for itself. Anheuser-Busch is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore denies the same.

**"State Regulation"**

10.      Anheuser-Busch admits that beer is distributed in Connecticut through a three-tier distribution system. Each state has its own laws and regulations that govern the sale of beer within that state.

11.      The statements set forth in Paragraph 11 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations. Each state has its own laws and regulations that govern the sale of beer within that state.

12.      Anheuser-Busch admits that the three tiers of the three-tier beer distribution system are brewers, wholesalers, and retailers. The remainder of Paragraph 12 is a legal conclusion to

which no response is required. To the extent a response is required, Anheuser-Busch denies the allegation. Each state has its own laws and regulations that govern the sale of beer within that state.

13.     The statements in Paragraph 13 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations. Each state has its own laws and regulations that govern the sale of beer within that state.

14.     The statement in Paragraph 14 is a legal conclusion to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegation. Each state has its own laws and regulations that govern the sale of beer within that state.

15.     The statements in Paragraph 15 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations. Each state has its own laws and regulations that govern the sale of beer within that state.

16.     The statements in Paragraph 16 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations. Regs. Conn. State Agencies § 30-6-A4(b) speaks for itself.

17.     The statements in Paragraph 17 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations. Conn. Gen. Stat. § 30-17 speaks for itself.

18.     The statements in Paragraph 18 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations. The Connecticut Liquor Control Act speaks for itself.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

**"The Market Segments for Beer"**

23.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 23.

24.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 24.

25.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 25.

26.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 26.

27.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 27.

**"Beer Distribution in the United States"**

28.     Anheuser-Busch admits that beer is sold through a three-tier distribution system in Connecticut. Brewers (such as Anheuser-Busch) produce beer and sell it to wholesalers (such as Dichello). Wholesalers, in turn, sell to retailers. Retailers sell to consumers for on-premise consumption (bars, restaurants, etc.) or off-premise consumption (grocery stores, liquor stores, etc.).

29.     Anheuser-Busch admits that certain states allow brewers to own wholesalers. Anheuser-Busch further admits that independent wholesalers distribute the vast majority of Anheuser-Busch products sold in the United States. Anheuser-Busch admits that Anheuser-Busch brands may account for a "large percentage" of the overall business of certain independent wholesalers but that the percentage of any particular wholesaler's overall sales comprised of

Anheuser-Busch products will be unique to that wholesaler. Anheuser-Busch denies the remaining allegations in Paragraph 29.

30. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 30. To the extent a response is required, Anheuser-Busch admits that Dichello carries products that compete with Anheuser-Busch brands and that the Equity Agreement expressly recognizes an Anheuser-Busch wholesaler's right to carry competing products.

**"The Relevant Market"**

31. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 31.

32. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 32. The statement set forth in Paragraph 32 is also a legal conclusion to which no response is required.

33. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 33. The statement set forth in Paragraph 33 is also a legal conclusion to which no response is required.

34. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 34. The statement set forth in Paragraph 34 is also a legal conclusion to which no response is required.

35. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 35. The statement set forth in Paragraph 35 is also a legal conclusion to which no response is required.

36.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 36. The statement set forth in Paragraph 36 is also a legal conclusion to which no response is required.

**"AB's Market Power within the Relevant Market"**

37.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 37.

38.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 38.

39.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 39.

40.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 40. The statement set forth in Paragraph 40 is also a legal conclusion to which no response is required.

**"AB's Anticompetitive Activity"**

41.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 41. The statement set forth in Paragraph 41 is also a legal conclusion to which no response is required.

42.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 42. The statement set forth in Paragraph 42 is also a legal conclusion to which no response is required.

43.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 43. The statement set forth

in Paragraph 43 is also a legal conclusion to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 43.

44. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 44. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 44.

    a. Denied. Anheuser-Busch entered into a Consent Decree, otherwise referred to as a Modified Final Judgment (the "Consent Decree"), with the Department of Justice in July 2016. Pursuant to that Consent Decree, Anheuser-Busch no longer requires "greater efforts" for Anheuser-Busch brands.

    b. Denied. Anheuser-Busch further responds that pursuant to the Consent Decree, Anheuser-Busch no longer requires "priority" efforts for Anheuser-Busch brands.

    c. Anheuser-Busch admits that, as set forth in Paragraph 2(a) of the Equity Agreement, the parties agreed "that this is a personal service contract and is entered into by Anheuser-Busch with Wholesaler in consideration of the approval by Anheuser-Busch of the person identified on the Wholesaler Information Sheet, Exhibit 1 hereto, as Manager of Wholesaler's business and in reliance by Anheuser-Busch on Wholesaler's representations as to that person's qualifications." Anheuser-Busch further admits that Paragraph 2(b) to the Equity Agreement states: "To ensure that Manager has the incentives and authority necessary to provide the services described

in subparagraph 2(a) above, Wholesaler shall grant to Manager day-to-day operating control over the business of Wholesaler, which shall include, without limitation, control by Manager of promoting, marketing, pricing, selling, advertising, merchandising, delivering and servicing the Products; hiring and termination of all other employees of Wholesaler with any responsibility for any of the foregoing activities; managing the business on a day-to-day basis; and making capital expenditures by the Wholesaler, subject to reasonable annual budget limits established by Wholesaler." "Products" is defined in the Equity Agreement as the "malt beverage products as are listed on the Wholesaler Information Sheet, Exhibit 1 hereto." Anheuser-Busch denies the remaining allegations in Paragraph 44(c).

d.   Anheuser-Busch admits that Paragraph 2(b) to the Equity Agreement states: "To ensure that Manager has the incentives and authority necessary to provide the services described in subparagraph 2(a) above, Wholesaler shall grant to Manager day-to-day operating control over the business of Wholesaler, which shall include, without limitation, control by Manager of promoting, marketing, pricing, selling, advertising, merchandising, delivering and servicing the Products; hiring and termination of all other employees of Wholesaler with any responsibility for any of the foregoing activities; managing the business on a day-to-day basis;

and making capital expenditures by the Wholesaler, subject to reasonable annual budget limits established by Wholesaler." "Products" is defined in the Equity Agreement as the "malt beverage products as are listed on the Wholesaler Information Sheet, Exhibit 1 hereto." Anheuser-Busch denies the remaining allegations in Paragraph 44(d).

e.     Anheuser-Busch admits that Paragraph 2(a) of the Equity Agreement provides that "[t]he business of selling malt beverages at wholesale has generally proved to be more successful when the manager of such business has an ownership interest," and that Paragraph 2(b) provides that "Wholesaler shall further require Manager to own at all times at least twenty-five percent (25%) of the equity of Wholesaler or such lesser percentage as Anheuser-Busch may determine in its sole discretion." Paragraph 2(b)(i) provides that "[i]f the individual who assumes the position of Manager does not at the time of assuming such position own at least twenty-five percent (25%) of the equity of Wholesaler, then subject to terms and conditions specifically approved by Anheuser-Busch's Vice President-Sales, Wholesaler may satisfy this ownership requirement by selling or assigning to the Manager a minimum of ten percent (10%) of the equity of Wholesaler, and granting to the Manager an option to acquire additional equity, so that within eight (8) years after the Manager assumes this position, Manager owns at

least twenty-five percent (25%) of the equity of Wholesaler or such lesser percentage as Anheuser-Busch may have determined, as provided above." Anheuser-Busch denies the remaining allegations in Paragraph 44(e).

f.      Anheuser-Busch admits that Paragraph 2(e) of the Equity Agreement provides that "Anheuser-Busch shall have the right, for good cause, to withdraw its approval of the Manager by notifying Wholesaler of deficiencies in Manager's performance." Anheuser-Busch denies the remaining allegations in Paragraph 44(f).

g.      Anheuser-Busch admits that Paragraph 3 of the Equity Agreement provides that "[i]t is important to both Wholesaler and Anheuser-Busch that at such time as Manager becomes unable to or ceases to manage Wholesaler's business, there be a person available to assume the management of Wholesaler's business." That person is the Successor-Manager, who "shall immediately become Manager" if the Manager "becomes unable or ceases to manage Wholesaler's business." Anheuser-Busch denies the remaining allegations in Paragraph 44(g).

h.      Anheuser-Busch admits that the parties agreed in the Equity Agreement that Anheuser-Busch has the right to approve or disapprove the person whom Wholesaler desires to designate as Successor-Manager and that Anheuser-Busch "shall not unreasonably withhold its approval." Anheuser-Busch further

admits that pursuant to Paragraph 3(e) of the Equity Agreement, "Anheuser-Busch shall have the right, for good cause, to withdraw its approval of the Successor-Manager by giving notice to Wholesaler." Anheuser-Busch denies the remaining allegations in Paragraph 44(h).

i.    Denied.

j.    Anheuser-Busch admits that as the parties agreed in the Equity Agreement, "[a] change of ownership of Wholesaler's business is a matter of vital concern to both Anheuser-Busch and Wholesaler." Pursuant to Paragraph 4 of the Equity Agreement, "Wholesaler shall request from Anheuser-Busch written approval in advance of any proposed transfer of an ownership interest in Wholesaler in accordance with the procedures set forth in Exhibit 6. Anheuser-Busch's approval of such request shall not be unreasonably withheld, subject to all of the requirements set forth in this Agreement." Anheuser-Busch denies the remaining allegations in Paragraph 44(j).

k.    Admitted.

l.    The statement set forth in Paragraph 44(l) is a legal conclusion to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegation.

45. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 45. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 45.

46. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 46. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 46.

47. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 47. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 47.

48. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 48. The statements set forth in Paragraph 48 are also legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 48.

49. Denied.

50. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 50. The statements set forth in Paragraph 50 are also legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 50.

51. The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 51. The statements set forth in Paragraph 51 are also legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 51.

52. Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

**"COUNT ONE (CUTPA)"**

60.     Anheuser-Busch restates and incorporates the answers set forth in Paragraphs 1 through 59 of its Answer.

61.     The statement set forth in Paragraph 61 is a legal conclusion to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 61.

62.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 62. To the extent a response is required, Anheuser-Busch admits that Section 35-26 of the Connecticut Antitrust Act and 15 U.S.C. § 1 of the Sherman Act prohibit unlawful restraints of trade. The statutes speak for themselves.

63.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 63. To the extent a response is required, Anheuser-Busch admits that Section 35-28 of the Connecticut Antitrust Act and 15 U.S.C. § 1 of the Sherman Act prohibit unlawful restraints of trade. The statutes speak for themselves.

64.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 64. To the extent a response is required, Anheuser-Busch admits that Section 35-27 of the Connecticut Antitrust Act and 15 U.S.C. § 2 of the Sherman Act prohibit unlawful monopolization and unlawful attempts to monopolize. The statutes speak for themselves.

65.     The statements set forth in Paragraph 65 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 65.

66.     The statements set forth in Paragraph 66 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 66.

67.     The statements set forth in Paragraph 67 are legal conclusions to which no response is required. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 67.

68.     Denied.

69.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 69. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 69.

70.     The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 70. To the extent a response is required, Anheuser-Busch denies the allegations in Paragraph 70.

**"COUNT TWO (Connecticut Antitrust Act)"**

71-76.   The Court has dismissed Count Two. *See* ECF No. 59. As a result, no response is required to Paragraphs 71-76 of Count Two. To the extent a response is required, the allegations are denied.

**"COUNT THREE (Connecticut Antitrust Act)"**

77-82.   The Court has dismissed Count Three. *See* ECF No. 59. As a result, no response is required to Paragraphs 77-82 of Count Three. To the extent a response is required, the allegations are denied.

**"COUNT FOUR (Connecticut Antitrust Act)"**

83-88.   The Court has dismissed Count Four. *See* ECF No. 59. As a result, no response is required to Paragraphs 83-88 of Count Four. To the extent a response is required, the allegations are denied.

**"COUNT FIVE (Connecticut Antitrust Act)"**

89-93.   The Court has dismissed Count Five. *See* ECF No. 59. As a result, no response is required to Paragraphs 89-93 of Count Five. To the extent a response is required, the allegations are denied.

**"COUNT SIX (Sherman Act, Section 1)"**

94-99.   The Court has dismissed Count Six. *See* ECF No. 59. As a result, no response is required to Paragraphs 94-99 of Count Six. To the extent a response is required, the allegations are denied.

**"COUNT SEVEN (Sherman Act, Section 2)"**

100-106. The Court has dismissed Count Seven. *See* ECF No. 59. As a result, no response is required to Paragraphs 100-106 of Count Seven. To the extent a response is required, the allegations are denied.

**"COUNT EIGHT (Tortious Interference)"**

107.     Anheuser-Busch restates and incorporates the answers set forth in Paragraphs 1 through 106 of its Answer.

108.     Anheuser-Busch is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, including because Paragraph 108 does not identify the manager or contract, and therefore Anheuser-Busch denies the same. The statement that "the manager of its business [] owes duties to Dichello as his employer, including the duty of loyalty" is a legal conclusion to which no response is required.

109.     Denied.

110.     Denied.

111.     Denied.

**"COUNT NINE (Declaratory Relief)"**

112-116. The Court has dismissed Count Nine. *See* ECF No. 59. As a result, no response is required to Paragraphs 112-116 of Count Nine. To the extent a response is required, the allegations are denied.

**"PRAYER FOR RELIEF"**

1.[1]      Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 1 on page 23 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

2.      Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 2 on page 23 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

3.      The Court has dismissed Dichello's claims arising under the Connecticut Antitrust Act. *See* ECF No. 59. As a result, no response is required to Paragraph 3 on page 23 of the Amended Complaint. To the extent a response is required, Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 3 on page 23 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

4.      The Court has dismissed Dichello's claims arising under the Connecticut Antitrust Act. *See* ECF No. 59. As a result, no response is required to Paragraph 4 on page 23 of the Amended Complaint. To the extent a response is required, Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 4 on page 23 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

5.      The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 5 on page 24 of the Amended Complaint. To the extent a response is required, Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 5 on page 24 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

6.      The Court has dismissed Dichello's claims arising under federal and state antitrust law. *See* ECF No. 59. As a result, no response is required to Paragraph 6 on page 24 of the

---

[1] The Amended Complaint restarts the paragraph numbering here again at "1."

Amended Complaint. To the extent a response is required, Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 6 on page 24 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

7.      Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 7 on page 24 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

8.      The Court has dismissed Dichello's claim for a declaratory judgment. *See* ECF No. 59. As a result, no response is required to Paragraph 8 on page 24 of the Amended Complaint. To the extent a response is required, Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 8 on page 24 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

9.      The Court has dismissed Dichello's claim for a declaratory judgment. *See* ECF No. 59. As a result, no response is required to Paragraph 9 on page 24 of the Amended Complaint. To the extent a response is required, Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 9 on page 24 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

10.      Anheuser-Busch denies that Dichello is entitled to the relief requested in Paragraph 10 on page 24 of the Amended Complaint, or to any relief from Anheuser-Busch whatsoever.

## AFFIRMATIVE DEFENSES

Anheuser-Busch asserts the following affirmative defenses without conceding that it has the burden of proof or persuasion as to any of them and without conceding that Dichello does not have to prove each and every element of its claims.

### First Affirmative Defense

Dichello lacks standing to seek relief against or from Anheuser-Busch.

### Second Affirmative Defense

The Amended Complaint fails to state a claim upon which relief can be granted.

### Third Affirmative Defense

Dichello's claims are barred in whole or in part by the statute of limitations.

### Fourth Affirmative Defense

Dichello's claims are barred in whole or in part by the doctrines of waiver and/or estoppel.

### Fifth Affirmative Defense

Dichello's claims are barred in whole or in part by the doctrine of unclean hands.

### Sixth Affirmative Defense

Dichello's claims are barred in whole or in part by the doctrine of laches.

### Seventh Affirmative Defense

Dichello's claims are barred in whole or in part by the doctrine of issue preclusion.

### Eighth Affirmative Defense

Dichello's claims are barred in whole or in part by the doctrine of claim preclusion.

### Ninth Affirmative Defense

Anheuser-Busch's conduct was privileged and justified because the acts complained of, to the extent they occurred at all, were undertaken pursuant to a contractual right.

### Tenth Affirmative Defense

The injuries alleged by Dichello were not caused in fact by any conduct or act of Anheuser-Busch.

### Eleventh Affirmative Defense

The injuries alleged by Dichello were not proximately caused by any conduct or act of Anheuser-Busch.

### Twelfth Affirmative Defense

Dichello's own acts and omissions caused or contributed any losses it experienced.

### Thirteenth Affirmative Defense

Dichello's recovery is barred in whole or in part by its failure to mitigate its alleged damages.

### Fourteenth Affirmative Defense

Under no circumstances is Dichello entitled to statutory penalties, declaratory relief, punitive damages, or attorneys' fees and costs.

### Fifteenth Affirmative Defense

Dichello's claims are barred by the United States Constitution and the Connecticut Constitution.


WHEREFORE, Anheuser-Busch respectfully requests that this Court dismiss Dichello's Amended Complaint against Anheuser-Busch with prejudice; Dichello's demand for relief be denied in every respect; Anheuser-Busch be awarded its costs in connection with this litigation; and the Court grant such other and further relief as may be just, proper, and equitable.

## COUNTERCLAIMS OF ANHEUSER-BUSCH, LLC

Anheuser-Busch, LLC brings these counterclaims against Dichello and alleges as follows:

## NATURE OF THE CASE

1.       The Equity Agreement is a personal service contract that Anheuser-Busch entered into in consideration of the individual designated by Dichello and approved by Anheuser-Busch to be the Equity Agreement Manager. Dichello is required to grant the Equity Agreement Manager "day-to-day operating control over the business of Wholesaler."

2.       Under the Equity Agreement, the parties agreed that Dichello would assign the Equity Agreement Manager a 10% ownership interest in the company within 360 days of assuming the position and a 25% ownership interest within eight years.

3.       Under the Equity Agreement, Dichello also agreed at all times to have an approved Successor-Manager in order to plan for a contingency where the Equity Agreement Manager is unable to or ceases to manage the business "to provide for continuity in the on-going management of Wholesaler's business involving the sale of Anheuser-Busch's Products."

4.       In or about 2013, John Hall, the son of Gloria Hall (the Chairman and Chief Executive Officer of Dichello), began working at Dichello.

5.       After commencing work at Dichello, John Hall assumed the position of President and thereafter made the decision to flout the requirements of the Equity Agreement. He fired the Equity Agreement Manager, refused to grant the new Equity Agreement Manager the required ownership interest despite representing to Anheuser-Busch that this would be done, refused to designate a Successor-Manager, usurped the responsibilities required to be delegated to the Equity Agreement Manager, and treated the Equity Agreement not as a contract but as a menu from which

Dichello could pick and choose the provisions it likes (such as its exclusive territory for the sales of Anheuser-Busch products) and disregard other provisions.

6.     Anheuser-Busch brings these claims to remedy Dichello's serial breaches of the Equity Agreement and the damage caused to Anheuser-Busch.

## PARTIES

7.     Anheuser-Busch, LLC is a Missouri limited liability company with its principal place of business at One Busch Place, St. Louis, Missouri 63118. Anheuser-Busch, LLC is the leading brewer of beer in the United States. Its brands include the Budweiser, Michelob, and Busch families of beer, as well as craft brands such as Goose Island and imports such as Stella Artois.

      a. The sole member of Anheuser-Busch, LLC is Anheuser-Busch Companies, LLC, a Delaware limited liability company with its principal place of business at One Busch Place, St. Louis, Missouri 63118.

      b. The sole member of Anheuser-Busch Companies, LLC is Anheuser-Busch InBev Worldwide, Inc., a Delaware corporation with its principal place of business at One Busch Place, St. Louis, Missouri 63118.

8.     Dichello is a Connecticut corporation with its principal place of business in the Town of Orange, County of New Haven, State of Connecticut.

## JURISDICTION AND VENUE

9.     The Court has original subject matter jurisdiction of these Counterclaims under 28 U.S.C. §§ 1332 and 2201. The amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs), there is complete diversity of citizenship, and an actual controversy exists between the parties.

10.     This Court also has supplemental jurisdiction of these Counterclaims under 28 U.S.C. § 1367 because they are so related to the claims asserted in the Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of the property that is the subject of the action is situated, in this judicial district.

## FACTS

12.     Beer is sold through a three-tier distribution system. Brewers (such as Anheuser-Busch) produce beer and sell it to wholesalers (such as Dichello). Wholesalers, in turn, sell to retailers. Retailers sell to consumers for on-premise consumption (bars, restaurants, *etc.*) or off-premise consumption (grocery stores, liquor stores, *etc.*).

13.     Dichello sold over 3.8 million cases of Anheuser-Busch products in 2019.

### A.     The Equity Agreement Is A Personal Service Contract.

14.     The relationship between Anheuser-Busch and Dichello is governed by a written contract—the Amended and Restated Anheuser-Busch, Inc. Wholesaler Equity Agreement ("Equity Agreement").

15.     The current version of the Equity Agreement was entered into by Anheuser-Busch and Dichello in 1997 and sets forth the rights and responsibilities of each party.

16.     The Equity Agreement grants Dichello an exclusive territory within which to sell certain Anheuser-Busch products: all of Fairfield and New Haven counties and portions of Litchfield and Middlesex counties in Connecticut. Because no other wholesaler is permitted sell those products in Dichello's exclusive territory, Dichello is Anheuser-Busch's sole route to market in that territory.

17.     The lucrative distribution rights granted by the Equity Agreement are perpetual unless the contract is terminated pursuant to its terms.

18.     Anheuser-Busch has the same Equity Agreement with all of its wholesalers (with exceptions related to wholesalers who distribute certain brands Anheuser-Busch has acquired over the years). The Equity Agreement between Anheuser-Busch and Dichello is governed by Connecticut law.

19.     The Equity Agreement is a "personal service contract." As the parties have agreed, "[t]he sale of malt beverages requires highly personalized promotion and sales service efforts. Anheuser-Busch relies upon the personal efforts and capabilities of the manager of Wholesaler's operation to aggressively promote, sell and service Anheuser-Busch's Products." (Equity Agreement ¶ 2(a).)

20.     The Equity Agreement requires that each wholesaler have an Equity Agreement Manager. The Equity Agreement Manager is required to have "**day-to-day operating control** over the business of Wholesaler, which shall include, without limitation, control by Manager of promoting, marketing, pricing, selling, advertising, merchandising, delivering and servicing the Products; hiring and termination of all other employees of Wholesaler with any responsibility for any of the foregoing activities; managing the business on a day-to-day basis; and making capital expenditures by the Wholesaler, subject to reasonable annual budget limits established by Wholesaler." (Equity Agreement ¶ 2(b) (emphasis added).)

21.     Under the Equity Agreement, Anheuser-Busch has the right to approve the Equity Agreement Manager as the Equity Agreement "is entered into by Anheuser-Busch with Wholesaler in consideration of the approval by Anheuser-Busch of the person identified on the Wholesaler Information Sheet, Exhibit 1 hereto, as Manager of Wholesaler's business and in

reliance by Anheuser-Busch on Wholesaler's representations as to that person's qualifications." (Equity Agreement ¶ 2(a).)

22.     As the parties have agreed, "[i]t is important to both Wholesaler and Anheuser-Busch that at such time as Manager becomes unable to or ceases to manage Wholesaler's business, there be a person available to assume the management of Wholesaler's business." (Equity Agreement ¶ 3.)

23.     Thus, the Equity Agreement requires that each wholesaler have a Successor-Manager "to plan for such a contingency and to provide for continuity in the on-going management of Wholesaler's business involving the sale of Anheuser-Busch's Products." (Equity Agreement ¶ 3.)

24.     When Anheuser-Busch approves a Successor-Manager, it is, in essence, approving the next Equity Agreement Manager. Under the Equity Agreement, the parties agreed that "[i]f Manager becomes unable or ceases to manage Wholesaler's business, Wholesaler shall immediately notify Anheuser-Busch of said fact and the Successor-Manager shall immediately become Manager." (Equity Agreement ¶ 3(b).)

25.     Under the Equity Agreement, Anheuser-Busch has the right "to approve the designation of a Successor-Manager and to withdraw its approval of either the Manager or Successor-Manager." (Equity Agreement ¶ 3(h).) The parties agreed that Anheuser-Busch has this right "to enable Anheuser-Busch to pass upon the qualifications and competence of the individuals who are chosen by Wholesaler to be the Manager and the future Manager of Wholesaler's business and who will therefore be responsible for promoting and selling the Products of Anheuser-Busch." (*Id.*)

**B.** **Under the Equity Agreement, the Equity Agreement Manager Must Be An Owner of the Business.**

26.     In Paragraph 2(a) of the Equity Agreement, the parties agreed that "[t]he business of selling malt beverages at wholesale has generally proved to be more successful when the manager of such business has an ownership interest." (Equity Agreement ¶ 2(a).)

27.     Paragraph 2(b) of the Equity Agreement states that the ownership interest is required "[t]o ensure that Manager has the incentives and authority necessary to provide the services described in subparagraph 2(a)"—to "aggressively promote, sell and service Anheuser-Busch's Products." (Equity Agreement ¶¶ 2(b), 2(a).)

28.     The Equity Agreement requires that the Equity Agreement Manager "own at all times at least twenty-five percent (25%) of the equity of Wholesaler or such lesser percentage as Anheuser-Busch may determine in its sole discretion." (Equity Agreement ¶ 2(b).)

29.     If the Equity Agreement Manager does not own 25% of the equity of the wholesaler at the time they assume that position, "Wholesaler may satisfy this ownership requirement by selling or assigning to the Manager **a minimum of ten percent (10%) of the equity of Wholesaler**," with an option to acquire additional equity so that the Equity Agreement Manager owns at least 25% of the Wholesaler within eight years of assuming the position. (Equity Agreement ¶ 2(b)(i) (emphasis added).)

**C.** **Turnover and Vacancies in Top Management Positions at Dichello.**

30.     Dichello has experienced a high turnover rate at the Equity Agreement Manager position.

31.     In December 2012, Dichello's Equity Agreement Manager left the company and Successor-Manager Peter Deane immediately became Equity Agreement Manager.

32. Less than a year later and shortly before Dichello was required to assign an ownership interest to him, Mr. Deane left the company.

33. Dichello then hired Sal DiBetta. Mr. DiBetta was approved as Successor-Manager and immediately became Dichello's new Equity Agreement Manager.

34. During the same period that Dichello was churning through Equity Agreement Managers, Dichello had no Successor-Manager.

**D.** **John Hall Agrees to a Successor-Manager Development Plan But Then Refuses to Complete It.**

35. John Hall is the son of Gloria Hall, Chairman, Chief Executive Officer, and Trustee of Dichello.

36. John Hall worked in entry level positions at Dichello from 1996 until 2001, when he left the company (and the industry).

37. John Hall did not return to Dichello until over a decade later.

38. In January 2015, Anheuser-Busch Field Sales personnel met with John Hall and Equity Agreement Manager Sal DiBetta to agree on a Successor-Manager Development Plan for John Hall.

39. Anheuser-Busch's goal was to build a mutually agreed-upon plan to ensure that John Hall would be in a position to be approved as Successor-Manager.

40. A Development Plan and a timeline within which to complete it were agreed to and signed by all parties, including John Hall.

41. By April 2015 it had become clear to Anheuser-Busch field sales personnel that John Hall was not adhering to the Development Plan. At a meeting in May 2015, John Hall confirmed that he had not been proceeding with the plan, crumpled up the plan and threw it at an Anheuser-Busch employee, and advised Anheuser-Busch to find another candidate.

42.     John Hall then instructed Sal DiBetta to formally submit him for the Successor-Manager position despite the fact that he had not completed the Development Plan and had not worked in the beer industry beyond entry-level positions in the 1990s.

43.     Anheuser-Busch interviewed John Hall for the Successor-Manager position in accordance with the procedures of the Equity Agreement and the standards expected of a Successor-Manager candidate. That interview confirmed that John Hall was not qualified to assume the Successor-Manager position.

44.     On July 31, 2015, Anheuser-Busch sent Dichello a letter in which it disapproved John Hall as Successor-Manager for reasons fully described therein.

**E.      Dichello Fires Equity Agreement Manager Sal DiBetta and Peter Deane Returns to Dichello.**

45.     Within a month of John Hall's disapproval as Successor-Manager, Dichello terminated Sal DiBetta.

46.     The termination of Mr. DiBetta left Dichello without an Equity Agreement Manager or a Successor-Manager.

47.     Dichello designated Peter Deane—Dichello's former Equity Agreement Manager—as its Successor-Manager.

48.     Anheuser-Busch formally approved Mr. Deane in a letter dated October 30, 2015. As Dichello did not have an Equity Agreement Manager, Mr. Deane immediately assumed that position.

49.     The Equity Agreement provides 360 days for a wholesaler to comply with the Equity Agreement Manager ownership requirement. (Equity Agreement ¶ 2(d).) Given the turmoil at the top of the company and turnover in management, however, Anheuser-Busch strongly urged Dichello to move quickly to complete the required 10% ownership interest transfer to Mr. Deane.

50.     On February 12, 2016, Anheuser-Busch and Dichello met at Anheuser-Busch's Region office in Boston, Massachusetts to discuss succession management at Dichello and the continuing impasse over the Successor-Manager position.

51.     At the meeting, Anheuser-Busch asked for an update on the status of Dichello providing Mr. Deane the required ownership interest. John Hall represented that Dichello was actively working on it and Anheuser-Busch should not be concerned because Dichello had 360 days to get Mr. Deane the 10% ownership interest.

52.     Paragraph 3(a) of the Equity Agreement permits Anheuser-Busch to grant a waiver of the Successor-Manager requirement "in its sole discretion."

53.     Following the meeting, Anheuser-Busch granted a six-month waiver of the Successor-Manager requirement in order to provide Dichello additional time to identify an acceptable candidate.

54.     On October 6, 2016, Anheuser-Busch provided Dichello "90 days to either submit to Anheuser-Busch a Successor-Manager Application or to request yet another waiver of the Successor-Manager requirement by submitting a statement to Anheuser-Busch setting forth specifically why such a waiver is required."

55.     The 90 days expired on January 7, 2017, without Dichello offering a candidate for Successor-Manager or requesting an additional waiver. Dichello is in breach of the Successor-Manager requirement set forth in Paragraph 3 of the Equity Agreement.

56.     At the same time, Dichello has also been in breach of the Equity Agreement Manager ownership requirement. On October 23, 2016, the 360-day period for Dichello to transfer the 10% ownership interest set forth in Paragraph 2 of the Equity Agreement to Mr. Deane expired without Dichello having completed the transfer.

57.     In early 2017, Dichello indicated an interest in selling its business and Anheuser-Busch agreed to stand down on compliance issues while Dichello sought to sell the business.

58.     Ultimately, Dichello was unable to reach an agreement with a third-party to sell the business.

59.     To date, Equity Agreement Manager Peter Deane does not have any ownership interest in Dichello.

60.     Upon information and belief, John Hall has usurped the responsibilities specifically reserved for the Equity Agreement Manager under the Equity Agreement.

61.     The Successor-Manager position remains open and there is no current waiver of the requirement in the Equity Agreement for Dichello to have a Successor-Manager.

**COUNT ONE**
**BREACH OF CONTRACT**
**Breach of Paragraph 2 of the Equity Agreement**

62.     Anheuser-Busch repeats and re-alleges each and every allegation above as if set forth in full herein.

63.     Anheuser-Busch and Dichello are parties to the Equity Agreement.

64.     At all relevant times, the Equity Agreement was a valid, binding, and enforceable contract between Anheuser-Busch and Dichello.

65.     Anheuser-Busch has performed all of its obligations under the Equity Agreement.

66.     Paragraph 2(b) of the Equity Agreement requires that Dichello grant the Equity Agreement Manager "day-to-day operating control over the business of Wholesaler, which shall include, without limitation, control by Manager of promoting, marketing, pricing, selling, advertising, merchandising, delivering and servicing the Products; hiring and termination of all other employees of Wholesaler with any responsibility for any of the foregoing activities;

managing the business on a day-to-day basis; and making capital expenditures by the Wholesaler, subject to reasonable annual budget limits established by Wholesaler."

67.     Dichello's Equity Agreement Manager does not have day-to-day operating control over the business of the Wholesaler. Rather, John Hall has usurped the authority and powers of the Equity Agreement Manager in violation of Paragraph 2 of the Equity Agreement.

68.     Paragraph 2(b) of the Equity Agreement sets forth the Equity Agreement Manager ownership requirement, providing that the Equity Agreement Manager shall "own at all times at least twenty-five percent (25%) of the equity of Wholesaler or such lesser percentage as Anheuser-Busch may determine in its sole discretion. . . . If the individual who assumes the position of Manager does not at the time of assuming such position own at least twenty-five percent (25%) of the equity of Wholesaler, . . . Wholesaler may satisfy this ownership requirement by selling or assigning to the Manager a minimum of ten percent (10%) of the equity of Wholesaler, and granting to the Manager an option to acquire additional equity, so that within eight (8) years after the Manager assumes this position, Manager owns at least twenty-five percent (25%) of the equity of Wholesaler or such lesser percentage as Anheuser-Busch may have determined."

69.     Pursuant to Paragraph 2(d) of the Equity Agreement, Dichello had 360 days from the date Peter Deane was approved as Equity Agreement Manager to satisfy the Equity Agreement Manager ownership requirement.

70.     Peter Deane became Equity Agreement Manager of Dichello on October 29, 2015. The 360 day period expired on October 23, 2016. Mr. Deane still has no ownership interest in Dichello.

71.     Dichello is in breach of the Equity Agreement Manager ownership provision in Paragraph 2 of the Equity Agreement.

72.     Anheuser-Busch has suffered damages proximately caused by Dichello's breaches.

**COUNT TWO**
**BREACH OF CONTRACT**
**Breach of Paragraph 3 of the Equity Agreement**

73.     Anheuser-Busch repeats and re-alleges each and every allegation above as if set forth in full herein.

74.     Anheuser-Busch and Dichello are parties to the Equity Agreement.

75.     At all relevant times, the Equity Agreement was a valid, binding, and enforceable contract between Anheuser-Busch and Dichello.

76.     Anheuser-Busch has performed all of its obligations under the Equity Agreement.

77.     Paragraph 3 of the Equity Agreement requires that Dichello have an approved Successor-Manager.

78.     Dichello does not have an approved Successor-Manager or a waiver of the Successor-Manager requirement.

79.     As a result, Dichello is in breach of Paragraph 3 of the Equity Agreement.

80.     Anheuser-Busch has suffered damages proximately caused by Dichello's breach.

**COUNT THREE**
**FRAUDULENT MISREPRESENTATION**

81.     Anheuser-Busch repeats and re-alleges each and every allegation above as if set forth in full herein.

82.     Dichello and John Hall are and have been well aware of the Equity Agreement Manager ownership requirement.

83.     At the time Anheuser-Busch approved Peter Deane as Equity Agreement Manager in October 2015, it strongly urged Dichello to move quickly to complete the ownership transfer to Mr. Deane to bring a sense of continuity and stability to the operation.

84.     Dichello and John Hall repeatedly assured Anheuser-Busch that Dichello would assign the requisite ownership interest to Peter Deane within 360 days. For example, at a meeting between representatives of Anheuser-Busch and Dichello in Boston on February 12, 2016, Anheuser-Busch asked for an update on the status of Dichello providing Mr. Deane the required ownership interest. John Hall assured Anheuser-Busch that Dichello was actively working on it, and that Anheuser-Busch should not be concerned because Dichello had 360 days to get Mr. Deane the 10% ownership interest.

85.     These representations were made to Anheuser-Busch knowing they were not true and that Dichello did not intend to provide 10% of the equity in Dichello to Mr. Deane.

86.     Dichello appointed Peter Deane as Equity Agreement Manager even though it had no intention of assigning him the actual responsibilities, which John Hall reserved to himself.

87.     Dichello did so in order to mislead Anheuser-Busch that it was complying with the Equity Agreement.

88.     Dichello made this representation to induce Anheuser-Busch to act upon it.

89.     Anheuser-Busch acted upon this representation to its injury.

90.     Anheuser-Busch has suffered damages proximately caused by Dichello's breach.

**COUNT FOUR**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

91.     Anheuser-Busch repeats and re-alleges each and every allegation above as if set forth in full herein.

92.     Anheuser-Busch and Dichello are parties to the Equity Agreement.

93.     At all relevant times, the Equity Agreement was a valid, binding, and enforceable contract between Anheuser-Busch and Dichello.

94.     The duty of good faith and fair dealing is a covenant implied in the Equity Agreement.

95.     Anheuser-Busch has performed all of its obligations under the Equity Agreement.

96.     Anheuser-Busch reasonably expected to receive certain benefits under the Equity Agreement, *i.e.*, that Dichello would perform its agreed-upon obligations.

97.     As described herein, Dichello has breached the Equity Agreement and engaged in conduct that injured Anheuser-Busch's right to receive the performance it bargained for and expected.

98.     When committing the acts by which it injured Anheuser-Busch's right to receive benefits it reasonably expected to receive under the contract, Dichello was acting in bad faith.

99.     Dichello's serial breaches of the Equity Agreement are not prompted by an honest mistake as to Dichello's rights or duties, but by a neglect or refusal to fulfill contractual duties contained in the contract.

100.    Dichello's bad faith includes but is not limited to the fraudulent misrepresentations made to Anheuser-Busch that were designed to mislead or deceive Anheuser-Busch into believing that Dichello would comply with the Equity Agreement and its evasion of the spirit of the bargain memorialized in the contract.

101.    Anheuser-Busch has suffered damages proximately caused by Dichello's breach.

**COUNT FIVE**
**DECLARATORY JUDGMENT**

102.    Anheuser-Busch repeats and re-alleges each and every allegation above as if set forth in full herein.

103.    Anheuser-Busch and Dichello are parties to the Equity Agreement.

104. At all relevant times, the Equity Agreement was a valid, binding, and enforceable contract between Anheuser-Busch and Dichello.

105. Anheuser-Busch has performed all of its obligations under the Equity Agreement.

106. As set forth above, Dichello is in breach of the requirement in Paragraph 2(b) of the Equity Agreement that it grant the Equity Agreement Manager day-to-day operating control over the business.

107. As set forth above, Dichello is in breach of the Equity Agreement Manager ownership requirement in Paragraph 2 of the Equity Agreement.

108. As set forth above, Dichello is in breach of the Successor-Manager requirement in Paragraph 3 of the Equity Agreement.

109. There presently exists an actual, justiciable controversy between the parties as to whether Dichello has breached Paragraph 2 and Paragraph 3 of the Equity Agreement. Anheuser-Busch desires a judicial determination and a declaration that Dichello is in breach of the requirement in Paragraph 2(b) of the Equity Agreement that Dichello grant the Equity Agreement Manager day-to-day operating control over the business, the Equity Agreement Manager ownership provision in Paragraph 2 of the Equity Agreement, and the Successor-Manager requirement in Paragraph 3 of the Equity Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Anheuser-Busch respectfully requests that the Court enter judgment against Dichello as follows:

(1)     Awarding Anheuser-Busch damages in amounts to be determined at trial;

(2)     Declaring that Dichello is in breach of the requirement in Paragraph 2(b) of the Equity Agreement that Dichello grant the Equity Agreement Manager day-to-day operating control over the business, the Equity Agreement Manager ownership provision in Paragraph 2 of the Equity Agreement, and the Successor-Manager requirement in Paragraph 3 of the Equity Agreement;

(3)     Awarding Anheuser-Busch pre-judgment and post-judgment interest;

(4)     Awarding Anheuser-Busch the costs and disbursements of pursuing this action, including, but not limited to, Anheuser-Busch's attorneys' fees and expenses; and

(5)     Granting Anheuser-Busch such other relief as this Court may deem just and proper.

Dated: September 28, 2021

Respectfully submitted,

ANHEUSER-BUSCH, LLC

By: /s/ Mark S. Baldwin
Mark S. Baldwin (CT01363)
Brown Rudnick LLP
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 509-6500
mbaldwin@brownrudnick.com

Brian D. Wallach (*pro hac vice*)
Gregory W. Langsdale (*pro hac vice*)
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
brian.wallach@cwt.com
greg.langsdale@cwt.com

*Counsel for Defendant/Counterclaim Plaintiff
Anheuser-Busch, LLC*

DICHELLO DISTRIBUTORS, INC.,
     *Plaintiff/Counterclaim Defendant*

Case No. 3:20-cv-01003-MPS

*v.*

ANHEUSER-BUSCH, LLC,
     *Defendant/Counterclaim Plaintiff.*

September 28, 2021

## CERTIFICATION OF SERVICE

I hereby certify that on September 28, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Mark S. Baldwin
Mark S. Baldwin